UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | 1:18-cr-00339-PAC-7 |
| : | |
| - against -       : | **OPINION & ORDER** |
| : | |
| RASHAUN MCKAY,      : | |
| Defendant.    : | |

------------------------------------------------------------X

Rashaun McKay is a 38-year-old inmate at Federal Correctional Institution Danbury ("FCI Danbury"). He brings this motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), alleging that his vitamin D deficiency increases the likelihood that he will contract COVID-19 and experience worse outcomes than others if he does contract it. McKay asserts that the need to protect his health, his fellow inmates, and the larger community by reducing the prison population is an extraordinary and compelling reason to release him. The Government opposes McKay's motion, contending that McKay has not established extraordinary and compelling reasons, and even if he could, 18 U.S.C. § 3553(a)'s sentencing factors weigh heavily against releasing McKay. For the reasons that follow, McKay's motion for compassionate release is DENIED.

## **BACKGROUND**

The Government charged McKay in an indictment filed with this Court on May 14, 2018. Indictment, ECF No. 3. On August 26, 2019, pursuant to a plea agreement, McKay pled guilty to Counts Two (Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349) and Three (Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1) of the Indictment.

1

Presentence Investigation Report ("PSR") ¶ 8, ECF No. 237.  The plea agreement stipulated to a sentencing range of 27–33 months' imprisonment on Count Two, while Count Three carried a statutorily-mandated minimum consecutive term of two years' imprisonment.  PSR ¶ 9.  The effective range, then, was 51–57 months' imprisonment.  PSR ¶ 9.  Probation Services recommended a sentence of 57 months.  PSR at 24, 25.

On January 22, 2020, the Court principally sentenced McKay to serve 18 months on Count Two followed by the mandatory consecutive term of 24 months on Count Three, for a total of 42 months' imprisonment.[1]  Sent'g Tr. 24:11–17, ECF No. 301.  "On October 16, 2020, the Honorable LaShann DeArcy Hall, in the Eastern District of New York . . . , sentenced Mr. McKay to an additional 6 months' incarceration and 6 months['] home detention for a violation of supervised release . . . in that district arising from his conviction" on Counts Two and Three.  Letter Mot. 2, ECF No. 329 ("C.R. Mot.").

McKay moved for compassionate release in this Court on October 28, 2020.[2]  C.R. Mot.  The Government responded on November 13, 2020.  Mem. Opp'n, ECF No. 330.  Sometime later, the Bureau of Prisons (BOP) transferred McKay from the Metropolitan Detention Center Brooklyn ("MDC") to FCI Danbury.[3]  Because the transfer mooted McKay's arguments for

---

[1] The Court also imposed a total term of three years' supervised release (*id.* at 24:18–20), and McKay consented to forfeit $50,000 and make restitution of $150,000 (*id.* at 24:3–6).

[2] McKay has not yet moved for compassionate release before Judge Hall, though he intends to.  *See United States v. McKay*, 16 Cr. 158 (LDH) (E.D.N.Y.); C.R. Mot. 2 n.3.

[3] BOP, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Feb. 22, 2021) (in "first name" field, type "Rashaun"; in "last name" field, type "McKay").  McKay's projected release date is October 18, 2021.  *Id.*

release based on conditions at the MDC,[4] the Court offered the parties an opportunity to supplement their briefing.  McKay filed his supplement on February 2, 2021 (Letter Motion, ECF No. 334 ("Def.'s Suppl.")), and the Government filed its supplement on February 12, 2021 (Resp. in Opp'n, ECF No. 335 ("Gov't's Suppl.")).

## DISCUSSION

**I.      Applicable Law**

Once imposed, a district court must leave a term of imprisonment undisturbed, subject to a few limited exceptions.  § 3582(c); *United States v. Maldonado*, No. 16 CR 285 (CM), 2021 WL 639069, at *1 (S.D.N.Y. Feb. 17, 2021).  The exception relevant here is found at § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, Section 603(b), Pub. L. No. 115–391, 132 Stat. 5194.  Under this "so-called compassionate release provision," *Maldonado*, 2021 WL 639069, at *1, a prisoner may directly petition the district court for a sentence reduction after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  § 3582(c)(1)(A).

If the defendant satisfies this administrative exhaustion requirement, the district court may grant a sentence reduction if it determines that (1) the defendant has met his burden of establishing that "extraordinary and compelling reasons warrant such a reduction," and (2) that any sentence reduction is consistent with § 3553(a)'s applicable sentencing factors.[5]

---

[4] *See United States v. Hooker*, No. 18 Cr. 768 (RMB), 2020 WL 6504539, at *3 (S.D.N.Y. Nov. 5, 2020) ("Now that [the defendant] has been transferred, his reliance on the conditions at MCC is moot.").

[5] § 3582(c)(1)(A) further requires that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*  Before September 25, 2020, this Court and others in this district applied United States Sentencing Guidelines § 1B1.13 as the applicable policy statement.  *United States v. Marriott*, No. 1:18-cr-00339-PAC-12, 2020 WL

§ 3582(c)(1)(A)–(i); *Maldonado*, 2021 WL 639069, at \*2 n.2 ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.") (quoting *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)); *United States v. Walden*, No. 96-cr-0962 (LAK), 2020 WL 7870670, at \*2 (S.D.N.Y. Dec. 31, 2020) (a court may grant release where extraordinary and compelling circumstances warrant it, and "the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a).").

## II.  Application

### A. Exhaustion

McKay has satisfied § 3582(c)(1)(A)'s exhaustion requirement.  McKay requested compassionate release from his warden at MDC Brooklyn on September 18, 2020 and did not receive a response.  C.R. Mot. 2 n.2; Mem. Opp'n Ex. 1, ECF No. 330–1.  While the record bears no indication that McKay requested compassionate release from his warden at FCI Danbury after his transfer there, this Court determines that a defendant need request compassionate release only once, and thereafter may bring his motion to the district court when his warden has denied his request or left it unanswered for 30 days.  *See Hooker*, 2020 WL 6504539, at \*1–2 (finding that defendant had satisfied the exhaustion requirement by requesting compassionate release from the warden of his first facility, even though he was transferred to

---

4883805, at \*2–3 (S.D.N.Y. Aug. 19, 2020); *Maldonado*, 2021 WL 639069, at \*2.  *United States v. Brooker*, however, held that "if a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it."  976 F.3d 228, 236 (2d Cir. 2020).  The result is that, where a defendant brings a motion for compassionate release on his own behalf, district courts are free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."  *Id.* at 237.  The only statutory constraint is that a court shall not consider rehabilitation alone an extraordinary and compelling reason.  *Id.* at 237–38.

another facility after filing his motion for compassionate release with the court); *but see United States v. Gineyard*, No. 3:19-cr-144-VLB-16, 2021 WL 531969, at *3 (D. Conn. Feb. 12, 2021) (finding that defendant had not exhausted his administrative remedies where he had "not attached a denial of compassionate release from the warden of FCI Otisville where he is in custody, only the warden from the facility where he had been in custody," but reaching the merits "for the sake of judicial economy and to avoid future motions based on the facts asserted in this motion.").

Even if McKay had not exhausted his administrative remedies, the Court would deem the exhaustion requirement waived in these circumstances. *See United States v. Brady*, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *2 (S.D.N.Y. May 15, 2020) (noting that the exhaustion requirement is waivable); *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *1 (S.D.N.Y. Apr. 20, 2020) (concluding the same, after prior opinion taking contrary position). The Government does not argue that McKay failed to exhaust his administrative remedies,[6] and McKay has complied with the statutory requirement once. On these facts, the Court would proceed to the merits in the name of judicial economy, even if failing to request release from his warden at FCI Danbury meant that McKay had not exhausted his administrative remedies.

## B. Extraordinary and Compelling Circumstances

McKay's motion for compassionate release fails on the statute's second requirement, however, which is not waivable. Given his good health and the conditions at FCI Danbury, McKay's vitamin D deficiency cannot establish extraordinary and compelling reasons warranting a sentence reduction.

---

[6] The Government represents only that it asked BOP counsel (without getting a response) whether the MDC warden had taken any action on McKay's request. Mem. Opp'n 8.

At 38 years old, McKay is outside the age groups most at-risk of experiencing severe complications if they contract COVID-19. *See* Ctrs. for Disease Control, ("CDC"), *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (updated Feb. 19, 2021); *see also United States v. Hart*, No. 17 Cr. 248 (VSB), 2020 WL 1989299, at *5 (S.D.N.Y. Apr. 27, 2020) ("Patients in [the 39-year-old defendant's] age bracket appear to have an extremely low risk of dying [from COVID-19] . . . ."). And McKay is in "good physical health." PSR ¶ 88. The only medical condition he raises in the present motion is his vitamin D deficiency. C.R. Mot. 1–2, 7; Mem. Opp'n 15; Gov't's Suppl. 1. But, as the Government points out, vitamin D deficiency is not on the CDC's list of conditions that do or might increase one's risk of severe illness from COVID-19. Mem. Opp'n 15; Gov't's Suppl. 1; CDC, *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 22, 2021).

Multiple courts in this district have found a defendant's vitamin D deficiency insufficient to establish extraordinary and compelling reasons, even when combined with other medical conditions. *See, e.g.*, *Walden*, 2020 WL 7870670, at *2 (finding no extraordinary and compelling reasons where 56-year-old defendant had a vitamin D deficiency, chronic cough, latent tuberculosis, chronic and acute sinusitis, and anorexia, among other maladies); *United States v. Minaya*, No. 01 CR 619 (VM), 2020 WL 5512518, at *1 (S.D.N.Y. Sept. 14, 2020) (same where 56-year-old defendant suffered from 11 maladies, including vitamin D deficiency, hypertension, thalassemia, blood clots, and "spinal issues"); *United States v. Fuller*, No. 04-cr-801 (PKC), 2021 WL 260121, at *1, *3 (S.D.N.Y. Jan. 26, 2021) (same where overweight 41-year-old defendant had a vitamin D deficiency, "a history of smoking," and "a family history of heart disease," and tested positive for COVID-19 but was asymptomatic). McKay does not cite a

6

single case in which a court has found a vitamin D deficiency sufficiently serious to constitute an extraordinary and compelling reason for a sentence reduction.[7]

The studies McKay cites do not convince the Court that McKay "is in a high-risk category." C.R. Mot. 7. The studies found that low levels of vitamin D are associated with higher COVID-19 infection and hospitalization rates. C.R. Mot. 7 n.18; Def.'s Suppl. 2 n.2. But several of the studies suggest that vitamin D supplementation can produce better outcomes in COVID-19 patients. *See* C.R. Mot. 7 n.18 ("[A] small, randomized study found that of 50 people hospitalized with COVID-19 who were given a high dose of a type of vitamin D (calcifediol), only one needed treatment in the intensive care unit," but "among the 26 people with COVID-19 who weren't given calcifediol, 13 needed to be treated in the intensive care unit."); Def.'s Suppl. 2 n.2 (citing Liji Thomas, *Vitamin D Deficiency Associated With Higher Risk of COVID-19 Hospitalization*, NEWS-MEDICAL.NET (Jan. 21, 2021), https://www.news-medical.net/news/20210121/Vitamin-D-deficiency-associated-with-higher-risk-of-COVID-19-hospitalization.aspx) ("If this [association between low vitamin D levels and COVID-19 hospitalization] is confirmed, vitamin D supplementation may be an inexpensive and rapid method to ensure better outcomes in such patients."); *id.* (citing José L. Hernández et al., *Vitamin D Status in Hospitalized Patients With SARS-COV-2 Infection*, J. OF CLINICAL ENDOCRINOLOGY

---

[7] And where defendants with vitamin D deficiencies have been able to establish extraordinary and compelling reasons, the defendants suffered from very serious health issues in addition to their vitamin D deficiencies; McKay, by contrast, has no underlying health conditions. *See, e.g.*, *United States v. Copeland*, No. 02-cr-01120 (FB), 2020 WL 2537250, at *1–3 (E.D.N.Y. May 19, 2020) (finding extraordinary and compelling reasons where 67-year-old defendant had a vitamin D deficiency, chronic hepatitis C, liver necrosis, hypertension, and was a stroke risk from his "aortic atherosclerotic disease," and granting release); *United States v. Gutierrez*, No. 3:16-cr-114 (VAB), 2020 WL 4435246, at *2–4 (D. Conn. Aug. 3, 2020) (finding extraordinary and compelling reasons where defendant had a vitamin D deficiency, asthma, and high blood pressure, among other conditions, but denying release on § 3553(a) grounds).

& METABOLISM (Oct. 27, 2020), https://academic.oup.com/jcem/advance-article/doi/10.1210/clinem/dgaa733/5934827) ("[Patients on vitamin D supplements] also had an overall lower percentage of the combined severity endpoint and ICU admissions, as well as a shorter length of hospital stay, although these data did not reach statistical significance."). BOP doctors diagnosed McKay's vitamin D deficiency and prescribed him vitamin D supplements in August 2020, so if vitamin D supplementation does reduce risk from COVID-19, McKay is already being protected. C.R. Mot. Ex. C at 1.[8] Indeed, McKay has produced no evidence that the BOP has failed to meet his medical needs, either at the MDC or FCI Danbury. McKay's speculation regarding the risk that his vitamin D deficiency poses in light of new strains of COVID-19 (Def.'s Suppl. 1) is ultimately insufficient to carry his burden of establishing extraordinary and compelling circumstances.

Conditions at FCI Danbury do not pose a significant health threat to McKay, either. While FCI Danbury experienced "'significant levels of infection' at the beginning of the pandemic in April 2020," *Walden*, 2020 WL 7870670, at *4 (citation omitted); *see also* Def.'s Suppl. 1, the BOP has since employed a variety of safety measures aimed at combatting the virus, including quarantines and reducing movement into facilities. *Walden*, 2020 WL 7870670, at *4; Mem. Opp'n 12–15. These measures have proven successful: "As of December 30, 2020, 28 out of at least 680 inmates at FCI Danbury ha[d] confirmed active cases of COVID-19, which represents a positivity rate of approximately four percent." *Walden*, 2020 WL 7870670, at *4. As of February 23, 2021, FCI Danbury had only one inmate positive for COVID-19 out of 659

---

[8] Exhibit C is McKay's medical records. Exhibit C has been filed under seal because it contains confidential medical information. *See United States v. Hart*, No. 15 Cr. 288 (RMB), 2021 WL 82281, at *6 (S.D.N.Y. Jan. 10, 2021); *United States v. Valentin*, No. 3:14-cr-55-1 (VLB), 2021 WL 431471, at *8 (D. Conn. Feb. 8, 2021).

inmates, with zero staff positive.[9]  BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Feb. 23, 2021); BOP, *FCI Danbury*, https://www.bop.gov/locations/institutions/dan/ (last visited Feb. 23, 2021).  This latter number represents a positivity rate of 0.0015%.  By contrast, Queens, where McKay plans to live if released (C.R. Mot. 6 n.16), had a positivity rate of 8.24% as of February 19—1.6% higher than the citywide rate, and nearly 55 times higher than the rate at FCI Danbury.[10]

Moreover, the BOP has begun vaccinating both inmates and staff, and has already administered over 52,000 doses; at FCI Danbury, 121 staff and 76 inmates have been fully inoculated against COVID-19.[11]  And with "the BOP committed to vaccinating all prisoners during the upcoming months," *Maldonado*, 2021 WL 639069, at *3, McKay will eventually receive the vaccine at FCI Danbury, too.  In fact, he might receive it more quickly in prison than outside of it.  *See Gineyard*, 2021 WL 531969, at *4 ("While there is not an exact date on which [the defendant] will receive the vaccine from the BOP, he is likely to receive it well before the date on which he would if released[,]" because "eligible members of the general public in Connecticut are not expected to have access to the COVID-19 vaccine until the Summer and Fall of 2021."); NYC Health, *COVID-19: Vaccine Eligibility*,

---

[9] McKay does not discuss the number of positive cases at FCI Danbury, and the Government mistakenly cites statistics for FCI Fort Dix rather than FCI Danbury.  C.R. Mot.; Def.'s Suppl.; Gov't's Suppl. 1–2.

[10] NYC Health, *COVID-19: Data*, https://www1.nyc.gov/site/doh/covid/covid-19-data.page (last visited Feb. 23, 2021) (under "Percent Positive and Test Rate of Molecular Testing by Zip Code," select "By borough" and scroll to "Queens 7-day percent positivity").

[11] BOP, *COVID-19 Vaccine Implementation*, https://www.bop.gov/coronavirus/ (last visited Feb. 23, 2021) (click "Learn more about vaccinations and view individual facility stats," then scroll to "Danbury FCI").

9

https://www1.nyc.gov/site/doh/covid/covid-19-vaccine-eligibility.page ("[V]accines [are] not expected to be widely available to all New Yorkers until mid-2021.") (last visited Feb. 23, 2021).

Given his good health and the current conditions at FCI Danbury, McKay has not established extraordinary and compelling reasons warranting a sentence reduction. "For that reason alone, the motion must be denied." *Maldonado*, 2021 WL 639069, at *4.

### C. § 3553(a) Factors

Because the Court finds no extraordinary and compelling reasons warranting a reduction in McKay's sentence, the Court makes no findings of fact or conclusions of law regarding whether the § 3553(a) factors counsel against granting his motion for compassionate release. If it were to do so, however, the Court will find that a reduction to the sentence would not be consistent with the sentencing factors specified in 18. U.S.C. 3553(a).

### CONCLUSION

McKay's motion for compassionate release is DENIED without prejudice as to its renewal should his health or the conditions at FCI Danbury materially worsen.

Dated: New York, New York
March 3, 2021

SO ORDERED

HONORABLE PAUL A. CROTTY
United States District Judge

10